UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

MIGUEL HAMILTON
Plaintiff, Pro Se
113-28 199th Street
Saint Albans, NY 11412,
Plaintiff,
v.

**2 5 CV 10359**

ASSISTANT DISTRICT ATTORNEY RICHARD FARRELL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;ASSISTANT DISTRICT ATTORNEY JOHN C. CARROLL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;DETECTIVE GREENE KUSH, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;SERGEANT JOSEPH PISCATELLA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;POLICE OFFICER PAUL H. ALVA (TAX #963372), IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;SERGEANT EVAN A. COUCH (TAX #965013), IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;POLICE OFFICER KARISA M. CRAWFORD (TAX #969610), IN HER INDIVIDUAL AND OFFICIAL CAPACITIES;SENIOR COUNSEL JOSEPH ZANGRILLI, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;MURIEL GOODE-TRUFANT, ACTING CORPORATION COUNSEL, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES;ASSISTANT CORPORATION COUNSEL HANNAH OLEYNIK, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES;CITY OF NEW YORK; PRIVATE-ACTOR DEFENDANTS: LYNN JEROME AND PAULA SINCLAIR, DANIEL FRIEDMAN, Esq.
Defendants.

Case No.: _____
JURY TRIAL DEMANDED

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF
(42 U.S.C. §§ 1983, 1985, 1986, 1988; FIRST AND FOURTEENTH AMENDMENTS)

---

**COMPLAINT**

Plaintiff **Miguel Hamilton**, by and for himself, alleges as follows:

---

**PRELIMINARY STATEMENT**

1.
Plaintiff **Miguel Hamilton** ("Plaintiff" or "Hamilton") brings this civil rights action pursuant to **42 U.S.C. §§ 1983, 1985, 1986, and the First and Fourteenth Amendments** to redress severe financial, reputational, regulatory, and constitutional injuries he sustained when Defendants fabricated a felony narrative concerning KTB Electric's Treasurer—**Gilbert Ellis**—and then **published, ratified, and preserved** that fabrication through false police records, prosecutorial misrepresentations, and **Rule 11–certified federal filings**.

2.
Plaintiff Hamilton is a **30% owner** of **KTB Electric, Inc.,** a New York State and New York City

**Minority-Certified Electrical Contracting Company** whose ability to secure high-value public and private contracts depends on:

- accurate M/WBE certification information,
- the integrity of its owners and officers,
- the absence of criminal accusations involving key personnel, and
- a clean compliance and ethics profile.

**3.**

When Defendants created and perpetuated a **false felony arrest narrative** against Treasurer Ellis—despite *no probable cause, no arraignment, no criminal complaint, no docket, and no judicial process*—they inflicted catastrophic and entirely foreseeable harm on KTB Electric's:

- certification status,
- vendor and procurement eligibility,
- reputation within the M/WBE marketplace,
- ability to bid on and secure City and State contracts, and
- financial viability.

**4.**

The Second Circuit has long held that **fabrication of evidence** and **government defamation that interferes with business opportunity** violates the Constitution.
See **Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997)** (fabrication of evidence violates due process);
**Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000)** (fabrication that causes foreseeable injury states a §1983 claim);
**Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994)** (government-created stigma that burdens employment or economic access constitutes a Fourteenth Amendment violation).

**5.**

After NYPD detectives fabricated the complaint and KCDAO ratified it, the **City of New York — through Corporation Counsel — filed Rule 11-certified submissions** in federal court falsely asserting that Ellis was lawfully arrested, processed, and subject to judicial sealing. These filings were objectively false and **elevated the fabrication into authoritative municipal fact**.

**6.**

The Second Circuit recognizes that litigation conduct itself can constitute unconstitutional municipal action, especially when it **prolongs or intensifies** constitutional violations.
See **Mangino v. Inc. Village of Patchogue, 808 F.3d 951, 957–66 (2d Cir. 2015)**.

**7.**

As a direct result of the City's false filings and ongoing publication of fabricated information, procurement agencies and M/WBE certification units treated KTB Electric as a business with a felony-implicated officer — triggering:

- delays,
- denials,

- heightened scrutiny,

- lost contracts, and

- reputational destruction.

**8.**
Plaintiff's economic losses are direct, measurable, and ongoing. The City's public filings remain online, continuing to inflict constitutional injury each time they are accessed, reviewed, indexed, or relied upon by procurement agencies — constituting a **continuing violation** under **Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009)** and **Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015)**.

**9.**
Plaintiff seeks compensatory damages, punitive damages against individual defendants, declaratory and injunctive relief, and attorney's fees pursuant to **42 U.S.C. § 1988**, for violations of his **First and Fourteenth Amendment rights** and statutory rights under **§§ 1983, 1985, and 1986**.

**The constitutional violations underlying Plaintiff's injuries originate in the same fabricated criminal narrative, police-generated falsehoods, prosecutorial misrepresentations, and materially false Rule 11 filings at issue in *Ellis v. City of New York*, No. 25-CV-01224 (AS)(RWL) (S.D.N.Y.).** In that matter, NYPD Detective Greene Kush fabricated a felony arrest narrative, the Kings County District Attorney's Office adopted that fabrication without investigation, and Corporation Counsel officials—acting as final municipal policymakers— ratified and publicly disseminated the false narrative through Rule 11–certified filings. These filings falsely asserted (1) that a felony arrest occurred, (2) that an arraignment occurred, (3) that a criminal docket existed, (4) that a judge issued a sealing order under CPL § 160.50, and (5) that the deed transfer was fraudulent. Each assertion was false.

This misconduct constitutes:
• **Fabrication of evidence**, violating the Fourteenth Amendment (*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000));
• **Stigma-plus constitutional defamation**, where reputational harm is combined with tangible burdens (*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004));
• **Property-interest deprivation** interfering with real property, equity, and business interests (*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009); *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005));
• **Monell liability** based on policymaker ratification (*Monell, Pembaur, Jeffes, Mangino*);
• **Retaliatory municipal litigation conduct** (*Dorsett, Gorman-Bakos*);
• **Continuing constitutional injury** because the Ellis filings remain publicly accessible (*Shomo, Gonzalez*).

Because the City refuses to correct or withdraw these false filings, their ongoing publication continues to inflict stigma-plus, property-interest, business, and reputational injury upon Plaintiff.

Plaintiff Hamilton's 30% ownership interest in KTB Electric, Inc. was harmed because the Ellis filings created a false government record connecting KTB's executive officers to criminal fraudulent activity. This led to lost contracts, reduced certification viability, and economic damages attributable to the City's continuing publication.

## PARTIES

**10. Plaintiff MIGUEL HAMILTON** is an individual residing at
**113-28 199th Street, Saint Albans, NY 11412.**
He is a **30% owner** of **KTB Electric, Inc.**, a New York City and State M/WBE-certified electrical contracting company.

**11.**
Plaintiff possesses protected Fourteenth Amendment **property interests** in:

- KTB Electric's business goodwill;

- M/WBE certification and renewal rights;

- eligibility for City and State procurement;

- public and private contract opportunities;

- company reputation and competitive standing;

- revenue streams and future earnings;

- business value and expected growth.

**12.**
KTB Electric, Inc. is located at **253 Ralph Avenue, Brooklyn, NY 11233**, and is owned as follows:

- **Miguel Hamilton — 30% Owner,**

- **Linval Buchanan — 30% Owner,**

- **Michael Cole — 30% Owner,**

- **Gilbert Ellis — 10% Owner and Treasurer** (target of fabricated felony narrative).

**13.**
Because M/WBE certification requires disclosure and integrity verification of **all owners and officers**, any fabricated criminal allegation against Treasurer Ellis **directly injures every other owner**, including Plaintiff Hamilton.

## City of New York

**14.**
Defendant **CITY OF NEW YORK** is liable under **Monell** for maintaining customs of evidence fabrication, suppression, false litigation filings, ratification of misconduct, and ongoing republication of defamatory government data.

## Corporation Counsel Defendants

**15. MURIEL GOODE-TRUFANT**, Corporation Counsel, approved and ratified false Rule 11 filings that harmed Plaintiff's business interests.

**16. JOSEPH ZANGRILLI,** Senior Counsel, supervised and approved the City's false litigation positions.

**17. HANNAH OLEYNIK,** Assistant Corporation Counsel, drafted and filed false Rule 11 submissions asserting nonexistent felony proceedings.

Each is sued in **individual and official capacities**.

---

**NYPD Defendants**

**18. DETECTIVE GREENE KUSH** fabricated the felony narrative without investigation or probable cause.

**19. SGT. EVAN A. COUCH,** Tax #965013, approved the false investigative process.

**20. PO PAUL H. ALVA,** Tax #963372, authored or entered false NYPD documents.

**21. PO KARISA M. CRAWFORD,** Tax #969610, entered fabricated data into NYPD systems.

**22. SGT. JOSEPH PISCATELLA** participated in irregular arrest-processing that bypassed judicial review.

**23. JOHN/JANE DOE OFFICERS 1-10** participated in the creation, approval, or maintenance of false NYPD records.

---

**KCDAO Defendants**

**24. ADA RICHARD FARRELL** adopted and perpetuated the fabricated allegations without investigation and suppressed exculpatory material.

**25. ADA JOHN C. CARROLL** misrepresented that a "sealed" criminal case existed when none ever did.

**26. JOHN/JANE DOE KCDAO INVESTIGATORS 1-10** contributed to suppression, ratification, and concealment.

---

**Private Defendants**

**27. LYNN JEROME** submitted knowingly false accusations that sparked the fabrication.

**28. PAULA SINCLAIR** participated in advancing the false allegations.

**29. DANIEL FRIEDMAN, ESQ.** repeated and amplified the fabricated narrative in civil litigation filings.

Each is sued in his or her **individual capacity**.

---

**JURISDICTION & VENUE**
*(With Second Circuit and Supreme Court Authority)*
**30.**
This action arises under the **Constitution and laws of the United States,** including **42 U.S.C. §§ 1983,**

**1985, 1986, and 1988**, and the **First and Fourteenth Amendments**, thereby invoking **federal question jurisdiction** under **28 U.S.C. § 1331**.

31.

This Court has jurisdiction under **28 U.S.C. § 1343(a)(3)–(4)** because Plaintiff seeks redress for **deprivations of constitutional rights** committed under color of state law, including liberty and property-interest violations recognized in:

- **Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997)**;
- **Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000)**;
- **Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994)**.

32.

Declaratory and injunctive relief are authorized under **28 U.S.C. §§ 2201–2202**, as Plaintiff seeks judicial declarations concerning the falsity of municipal filings and prospective relief preventing continued constitutional injury.

33.

Supplemental jurisdiction over state-law claims is proper under **28 U.S.C. § 1367(a)** because Plaintiff's state-law claims arise out of the same **common nucleus of operative facts** as his federal claims.

**Venue in the Southern District of New York**

34.

Venue is proper in this District under **28 U.S.C. § 1391(b)(1)** because **Defendant City of New York** resides here for venue purposes and maintains its principal policymaking offices — including **Corporation Counsel** — within this District.

35.

Venue is also proper under **28 U.S.C. § 1391(b)(2)** because a **substantial part of the events or omissions** giving rise to Plaintiff's claims occurred within the Southern District, including:

(a) the drafting, approval, and submission of **Rule 11–certified filings** by the Office of the Corporation Counsel located in Manhattan;

(b) policymaker ratification of false statements concerning nonexistent felony proceedings;

(c) municipal decisions that preserved and republished fabricated allegations;

(d) continuing online publication through SDNY docket systems that procurement agencies rely upon;

(e) municipal policymaking meetings and litigation coordination within this District.

36.

The **Second Circuit** recognizes that venue is proper where municipal policymaking activity occurs, even if the plaintiff resides elsewhere.

See **Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)**;

**Jeffes v. Barnes, 208 F.3d 49 (2d Cir. 2000)** (municipal liability attaches where decisions are made by final policymakers).

37.

Venue is independently proper under **28 U.S.C. § 1391(b)(3)** because all Defendants are subject to personal jurisdiction in New York and the tortious actions — including fabrication, suppression, false filings, and ongoing republication — occurred predominantly within the City of New York's governmental structure, headquartered in this District.

**Personal Jurisdiction**

38.

This Court has personal jurisdiction over all Defendants because:

(a) they reside or are employed within New York;

(b) they acted under color of New York law;

(c) they engaged in conduct causing injury to Plaintiff within this State;

(d) municipal policymaking, litigation strategy, and false filings were executed within this District;

(e) the ongoing publication of false information continues to cause injury within this District.

**39.**
The Second Circuit has held that personal jurisdiction exists where officials act within New York and cause injury within New York.
See **Best Van Lines, Inc. v. Walker, 490 F.3d 239 (2d Cir. 2007).**

---

**FACTUAL ALLEGATIONS**
**SECTION A — Origin of the Fabricated Narrative Affecting KTB Electric, Inc.**
*(With Second Circuit Authority)*

**The constitutional violations underlying Plaintiff's injuries originate in the same fabricated criminal narrative, police-generated falsehoods, prosecutorial misrepresentations, and materially false Rule 11 filings at issue in *Ellis v. City of New York*, No. 25-CV-01224 (AS)(RWL) (S.D.N.Y.).** In that matter, NYPD Detective Greene Kush fabricated a felony arrest narrative, the Kings County District Attorney's Office adopted that fabrication without investigation, and Corporation Counsel officials—acting as final municipal policymakers—ratified and publicly disseminated the false narrative through Rule 11–certified filings. These filings falsely asserted (1) that a felony arrest occurred, (2) that an arraignment occurred, (3) that a criminal docket existed, (4) that a judge issued a sealing order under CPL § 160.50, and (5) that the deed transfer was fraudulent. Each assertion was false.

This misconduct constitutes:
• **Fabrication of evidence**, violating the Fourteenth Amendment (*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000));
• **Stigma-plus constitutional defamation**, where reputational harm is combined with tangible burdens (*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004));
• **Property-interest deprivation** interfering with real property, equity, and business interests (*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009); *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005));
• **Monell liability** based on policymaker ratification (*Monell, Pembaur, Jeffes, Mangino*);
• **Retaliatory municipal litigation conduct** (*Dorsett, Gorman-Bakos*);
• **Continuing constitutional injury** because the Ellis filings remain publicly accessible (*Shomo, Gonzalez*).

Because the City refuses to correct or withdraw these false filings, their ongoing publication continues to inflict stigma-plus, property-interest, business, and reputational injury upon Plaintiff.

Plaintiff Hamilton's 30% ownership interest in KTB Electric, Inc. was harmed because the Ellis filings created a false government record connecting KTB's executive officers to criminal fraudulent activity. This led to lost contracts, reduced certification viability, and economic damages attributable to the City's continuing publication.

**40.**
The constitutional injuries suffered by Plaintiff **Miguel Hamilton** originate from a **fabricated felony narrative** manufactured by NYPD Detective **Greene Kush**, adopted and ratified by the Kings County District Attorney's Office ("KCDAO"), and subsequently **elevated into official municipal fact** by the City of New York through **Rule 11–certified federal filings** falsely asserting a felony arrest, judicial proceedings, and criminal "sealing."

**41.**

Private Defendants **Lynn Jerome** and **Paula Sinclair** initiated this narrative when they knowingly submitted **false allegations** accusing Treasurer **Gilbert Ellis** of deed fraud, forgery, and felony theft— despite objective public records disproving each claim.

**42.**

Detective Kush accepted these allegations **without conducting any investigation, without probable cause**, and **without verifying any documentary evidence**, thereby violating well-established Second Circuit constitutional standards prohibiting fabrication of evidence.

See **Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997).**

**43.**

Detective Kush then converted a **civil real-estate disagreement** into a **fabricated criminal allegation,** falsely asserting that Treasurer Ellis had committed Grand Larceny in the Second Degree.

**44.**

At the time Detective Kush created the criminal complaint, he knew or recklessly disregarded that:

(a) no victim had been defrauded;

(b) property records disproved the allegations;

(c) no forensic or documentary evidence supported the claims;

(d) no admissible evidence existed for probable cause;

(e) no judicial process had been initiated or reviewed.

**45.**

Fabrication of criminal allegations by police violates the Fourteenth Amendment, and the Second Circuit recognizes it as an independent §1983 constitutional tort.

See **Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir. 2000).**

**46.**

NYPD supervisors—including **Sgt. Evan Couch, PO Paul H. Alva, PO Karisa M. Crawford**, and **Sgt. Joseph Piscatella**—approved, entered, or permitted the inclusion of false information in NYPD databases, thereby **institutionalizing the fabrication.**

**47.**

These approvals and data entries created the false appearance that a **legitimate felony arrest** and **criminal investigation** existed, even though:

(a) Ellis was never arraigned;

(b) no docket or case number was created;

(c) no DA complaint was filed;

(d) no court ever heard the matter.

**48.**

The Second Circuit has repeatedly held that liability attaches where officers approve or perpetuate fabricated evidence.

See **Ricciuti,** supra; **Zahrey,** supra; **Blue v. Koren, 72 F.3d 1075 (2d Cir. 1995).**

**KCDAO Adoption of the Fabrication**

**49.**

The fabricated NYPD narrative was then adopted wholesale by **ADA Richard Farrell** and **ADA John Carroll** of the KCDAO, who took no steps to verify its authenticity.

**50.**

KCDAO personnel:

(a) conducted no interviews,

(b) reviewed no documentary evidence,

(c) performed no legal analysis,

(d) did not consult public property records,

(e) suppressed exculpatory materials furnished by the Plaintiff and third parties.

**51.**

Instead of acknowledging the absence of any judicial or evidentiary foundation, ADA Carroll falsely represented that a **"sealed felony case"** existed for Ellis — even though no arrest or arraignment ever occurred.

**52.**

The Second Circuit holds that misrepresentations concealing the absence of judicial process may constitute **due process violations** and support municipal liability.
See **Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992).**

**Corporation Counsel's Republication of the Fabrication**

**53.**

The false felony narrative became more damaging when the **City of New York**, through **Corporation Counsel**, repeated and ratified these false allegations in **Rule 11–certified filings** submitted in the Southern District of New York.

**54.**

These filings falsely asserted that:

(a) Ellis was lawfully arrested;

(b) Ellis was arraigned;

(c) a criminal case existed in state court;

(d) the case was "sealed" under CPL § 160.50;

(e) judicial process had occurred.

**55.**

Each of these statements was objectively false, because:

(a) no felony arrest ever occurred;

(b) no arraignment took place;

(c) no court file or docket exists;

(d) no sealing order was issued;

(e) the supposed "seal" was invoked to block FOIL access to records that never existed.

**56.**

Municipal litigation conduct that **perpetuates constitutional violations** constitutes actionable municipal policy under §1983.
See **Mangino v. Inc. Village of Patchogue, 808 F.3d 951 (2d Cir. 2015).**

**Foreseeable Harm to KTB Electric and to Plaintiff Hamilton**

**57.**

Because KTB Electric must disclose **all arrests, charges, criminal investigations, and integrity issues** involving its owners and officers in every certification and procurement application, the fabrication against Treasurer Ellis **directly interfered with**:

(a) M/WBE certification;

(b) vendor eligibility;

(c) contract bidding;

(d) prequalification;

(e) procurement scoring.

**58.**

The Second Circuit recognizes business reputation, occupational access, and contract eligibility as protected **liberty and property interests**.
See:

- **Spinelli v. City of New York, 579 F.3d 160 (2d Cir. 2009);**
- **O'Connor v. Pierson, 426 F.3d 187 (2d Cir. 2005);**
- **Valmonte**, supra.

**59.**

As a 30% owner, Plaintiff Hamilton's economic stake was directly injured when:

(a) KTB Electric lost certification opportunities;

(b) procurement officials flagged the company for "integrity issues";

(c) contract bids were denied or downgraded;

(d) prime contractors rejected the company for subcontracting;

(e) future earning capacity diminished.

Case 1:25-cv-10359-AS-RWL    Document 1    Filed 12/12/25    Page 10 of 44

**60.**

The fabricated allegations created a **state-sponsored stigma** that impaired Plaintiff's ability to pursue his occupation and business interests — satisfying the "stigma-plus" doctrine recognized in **Valmonte, Patterson,** and **Segal.**

**Institutionalization of the Fabrication Through Public Records**

**61.**

Once Corporation Counsel submitted false filings on the federal docket, the fabricated narrative became **searchable, indexable, and publicly accessible,** ensuring that:

- procurement officers,
- certification reviewers,
- prime contractors,
- investigators, and
- background check systems

encountered the false felony narrative as if it were legitimate government fact.

**62.**

Each new access, search, or reliance constitutes a **new constitutional injury,** recognized under the **continuing violation doctrine.**

See:

- **Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009);**
- **Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015).**

**63.**

Thus, the origin of the fabricated narrative is not an isolated event — it is the **starting point of an ongoing municipal constitutional violation** that continues to harm Plaintiff Hamilton's property, liberty, and economic interests.

**SECTION B — Corporation Counsel's Rule 11 Misconduct & Municipal Ratification**

*(With Second Circuit and Supreme Court Authority)*

**64.**

After NYPD fabricated the felony allegations and KCDAO adopted them without investigation, the **City of New York,** through its **Office of the Corporation Counsel,** further escalated the constitutional violation by **republishing, legitimizing, and institutionalizing** the fabricated narrative in **Rule 11– certified filings** submitted in the Southern District of New York.

**65.**

These Rule 11–certified submissions contained **materially false statements of fact,** including assertions that:

(a) Treasurer **Gilbert Ellis** had been lawfully arrested on felony charges;

(b) Ellis had been arraigned in criminal court;

(c) judicial proceedings occurred;

(d) the matter was "sealed" under CPL § 160.50;

(e) the alleged charges had been subject to formal judicial review.

**66.**

Each assertion was **objectively false.** No arrest, arraignment, criminal complaint, docket number, indictment, judicial proceeding, or sealing order ever existed.

**67.**

By filing these false statements under Rule 11, Corporation Counsel gave the fabricated narrative a **seal of official government legitimacy,** magnifying its impact on:

- procurement eligibility,
- M/WBE certification,
- contract awards, and
- business reputation.

Page **10** of **44**

**I. Rule 11 Misconduct as Constitutional Injury**

**68.**

Rule 11 requires attorneys to ensure that factual representations submitted to federal courts have evidentiary support. By certifying false statements concerning a nonexistent criminal case, Corporation Counsel:

> (a) knowingly misled the federal judiciary;
> (b) perpetuated fabricated police allegations;
> (c) misrepresented the existence of judicial proceedings;
> (d) obstructed Plaintiff's and KTB Electric's ability to clear their names;
> (e) caused procurement agencies to rely on false municipal information.

**69.**

The Second Circuit recognizes that **municipal litigation conduct that perpetuates constitutional violations constitutes "state action" under § 1983.**

See:

> • **Mangino v. Inc. Village of Patchogue, 808 F.3d 951, 957–66 (2d Cir. 2015)** (municipal litigation strategy can independently violate constitutional rights);
> • **Anthony v. City of New York, 339 F.3d 129 (2d Cir. 2003)** (Corporation Counsel actions attributable to the City).

**70.**

Thus, Corporation Counsel's false filings were not protected advocacy — they were **affirmative constitutional violations** that deepened and prolonged the harm caused to Plaintiff Hamilton.

**II. Policymaker Ratification — The City's Official Policy Under Monell**

**71.**

Defendants **Muriel Goode-Trufant** (Corporation Counsel) and **Joseph Zangrilli** (Senior Counsel, Special Federal Litigation Division) are **final municipal policymakers** whose decisions bind the City under **Monell v. Department of Social Services, 436 U.S. 658 (1978).**

**72.**

These policymakers **reviewed, approved, authorized, and ratified** the false filings, thereby converting individual misconduct into **official municipal policy.**

**73.**

Policymaker ratification is a recognized independent basis for municipal liability.

See:

> • **Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81 (1986);**
> • **Jeffes v. Barnes, 208 F.3d 49, 57–60 (2d Cir. 2000);**
> • **Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 126 (2d Cir. 2004).**

**74.**

The ratification here was particularly egregious because Corporation Counsel ratified filings:

> (a) after receiving notice of falsity;
> (b) despite FOIL disclosures showing no case existed;
> (c) despite absence of any judicial documentation;
> (d) with knowledge that procurement agencies rely heavily on municipal filings for contractor vetting.

**III. Litigation Misconduct as Ongoing Republication**

**75.**

Once filed, Corporation Counsel's false submissions became part of the **public federal docket**, where they:

> (a) are indexed by Google;
> (b) appear in procurement integrity checks;
> (c) are reviewed by M/WBE certification officers;
> (d) influence public contracting decisions;
> (e) are repeatedly accessed by private contractors and investigators.

**76.**
Each time the false filings are accessed or relied upon by agencies, Plaintiff suffers **a new constitutional injury** under the **continuing violation doctrine**.
See:
- **Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009);**
- **Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015).**

**77.**
Corporation Counsel's conduct therefore functions as an **ongoing republication of defamation**, satisfying the "stigma" component of the stigma-plus doctrine and causing persistent impairment of KTB Electric's business rights.

## IV. Foreseeable Harm to Plaintiff Hamilton as a 30% Owner

**78.**
Corporation Counsel's ratification foreseeably caused economic and reputational harm to KTB Electric and Plaintiff Hamilton, including:
   (a) loss of contract opportunities;
   (b) damage to M/WBE certification standing;
   (c) heightened scrutiny during vendor vetting;
   (d) diminished business reputation;
   (e) loss of revenue and future earnings;
   (f) impaired ability to compete in the electrical contracting market.

**79.**
The Second Circuit recognizes economic injury from state-created stigma and litigation misconduct as compensable under § 1983.
See:
- **Spinelli v. City of New York, 579 F.3d 160 (2d Cir. 2009)** (licensing/procurement injury = property-interest violation);
- **Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994)** (government stigma that burdens economic opportunity = constitutional injury).

## V. Municipal Liability Established

**80.**
Corporation Counsel's Rule 11 misconduct:
   (a) transformed the false felony allegation into authoritative government fact;
   (b) ratified NYPD/KCDAO constitutional violations;
   (c) preserved fabricated allegations in the SDNY docket;
   (d) caused ongoing economic harm;
   (e) constitutes official municipal policy under **Monell**.

**81.**
The City of New York is therefore liable because the misconduct:
- was undertaken by final policymakers,
- constituted official policy or custom,
- perpetuated constitutional violations, and
- foreseeably caused Plaintiff's economic and reputational injury.

## SECTION C — Harm to Certification, Procurement & Revenue
*(With Second Circuit Case Law and Precedents)*

**82.**
**KTB Electric, Inc.** is a New York City and New York State **Minority/Women-Owned Business Enterprise (M/WBE)** certified electrical contracting company whose success depends on:
   (a) maintaining valid M/WBE certification,
   (b) maintaining vendor eligibility for government contracts,

  (c) passing integrity and background checks for agency procurement,
  (d) preserving a clean ethics and compliance record for all owners and officers, and
  (e) sustaining goodwill and credibility within the public and private construction markets.

**83.**

Because M/WBE certification and procurement authorities require disclosure of **any arrest, indictment, charge, or criminal investigation** involving **any owner or officer**, the fabricated felony allegations against Treasurer **Gilbert Ellis** had **direct, automatic, and foreseeable negative consequences** for KTB Electric and Plaintiff Hamilton.

## I. Impact on M/WBE Certification

**84.**

Following the fabrication and republication of the false felony narrative, KTB Electric's M/WBE certification applications—both for renewal and new procurement categories—were:

  (a) delayed,
  (b) flagged for investigation,
  (c) subjected to heightened integrity scrutiny,
  (d) questioned by certification officers,
  (e) deemed incomplete or inconsistent due to the false municipal records.

**85.**

The Second Circuit recognizes that government-created stigma interfering with access to state-administered benefits or regulated opportunities constitutes a constitutional injury.
See:

- **Valmonte v. Bane, 18 F.3d 992, 1001–05 (2d Cir. 1994)** (state-created listing that burdens employment opportunities violates due process);
- **Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004)** (reputation linked to occupational impairment constitutes stigma-plus).

## II. Impact on Procurement Eligibility

**86.**

Municipal, state, and federal procurement agencies rely heavily on background checks and federal docket searches.
The City's false Rule 11–certified filings made it appear that Treasurer Ellis:

  (a) had been arrested on felony charges;
  (b) had undergone judicial proceedings;
  (c) had a sealed criminal matter;
  (d) was implicated in financial crimes relevant to contracting integrity.

**87.**

Accordingly, procurement agencies and prime contractors:

  (a) flagged KTB Electric as a business with integrity concerns;
  (b) downgraded its procurement or scoring profile;
  (c) rejected or declined its bids;
  (d) removed the company from vendor lists;
  (e) denied prequalification applications;
  (f) required additional documentation that KTB could not provide because the "criminal case" never existed.

**88.**

The Second Circuit recognizes that **loss of professional opportunity, vendor eligibility, and the ability to compete in one's occupation** constitutes deprivation of a protected liberty and property interest.
See:

- **Spinelli v. City of New York, 579 F.3d 160, 169–73 (2d Cir. 2009)** (license-dependent business and goodwill are protected property interests);
- **O'Connor v. Pierson, 426 F.3d 187, 197–98 (2d Cir. 2005)** (professional reputation tied to economic opportunity is constitutionally protected).

### III. Impact on KTB Electric's Revenue and Business Operations

**89.**

As a **direct and foreseeable result** of the City's fabrication and republication of false felony allegations, KTB Electric suffered:

> (a) loss of awarded public contracts,
> (b) elimination from consideration for new contracts,
> (c) withdrawal of subcontracting agreements,
> (d) decreased private-sector opportunities due to background check concerns,
> (e) reduced bidding competitiveness,
> (f) diminished business reputation and trustworthiness,
> (g) negative procurement integrity classifications,
> (h) long-term loss of earning capacity.

**90.**

Plaintiff Hamilton suffered proportional injury to his **30% ownership stake**, including:

- direct financial losses,
- lost distributions and profits,
- loss of enterprise value,
- reputational harm as a co-owner,
- impaired ability to grow or expand the business.

### IV. Legal Recognition of Economic and Business Injury as Constitutional Harm

**91.**

The Second Circuit holds that **economic injury resulting from unconstitutional government action is compensable under § 1983**, particularly where:

- fabricated charges harm business reputation or revenue (Ricciuti, Zahrey),
- government stigma burdens professional or commercial opportunity (Valmonte, Patterson),
- municipal action harms business goodwill or contract eligibility (Spinelli).

**92.**

These precedents apply directly because KTB Electric's procurement and certification opportunities are **government-administered economic rights,** and the City's fabricated felony narrative **directly restricted Plaintiff's access** to them.

### V. Corporation Counsel's Filings Created a Continuing Economic Harm

**93.**

Corporation Counsel's false filings remain publicly accessible through:

> (a) PACER and RECAP,
> (b) Google indexing,
> (c) procurement databases,
> (d) agency vendor review systems.

**94.**

Each time KTB Electric submits a bid, an agency performs a search, or a vendor conducts due diligence, the City's false narrative materially impacts:

- eligibility,
- credibility,
- integrity rating,
- business opportunity.

**95.**

The Second Circuit recognizes this as a **continuing violation,** because the harm persists each time the defamatory, fabricated information is accessed.

See:

- **Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009);**
- **Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015).**

### VI. Direct Injury to Plaintiff Hamilton

**96.**

As a direct and foreseeable result of Defendants' conduct, Plaintiff Hamilton suffered:

      (a) substantial monetary loss;

      (b) loss of business opportunities and market competitiveness;

      (c) reputational and occupational harm;

      (d) emotional distress;

      (e) ongoing injury due to continuing republication of false filings.

**97.**

These damages are recoverable under § 1983 because the Second Circuit explicitly allows:

- recovery for lost business revenue (**Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004)**),
- recovery for loss of professional or occupational opportunity (**Patterson, Valmonte**),
- recovery for impairment of business goodwill (**Spinelli**).

---

### SECTION D — Continuing Publication & Continuing Constitutional Injury
*(With Second Circuit Case Law and Precedents)*

**98.**

The constitutional injuries suffered by Plaintiff Hamilton and KTB Electric, Inc. are **not historical or completed**. They persist every day because the City of New York continues to **publish, maintain, ratify, and disseminate** false and fabricated felony allegations involving Treasurer **Gilbert Ellis** through public records, federal filings, online systems, and procurement-integrity platforms.

**99.**

Corporation Counsel's **Rule 11–certified filings**, which falsely assert that Ellis was arrested, arraigned, subject to judicial proceedings, and the subject of a sealed criminal matter, remain publicly accessible on:

      (a) PACER,

      (b) RECAP,

      (c) Google-indexed federal docket repositories,

      (d) legal research platforms,

      (e) procurement review systems used by NYC, NYS, and private contractors.

**100.**

Each day that these false filings remain online, the fabricated felony narrative continues to inflict **new, independent constitutional injuries**—including stigma-plus harms, deprivation of business opportunity, procurement exclusion, and damage to business goodwill.

---

### I. Second Circuit Law Recognizing Continuing Publication as Ongoing Injury

**101.**

The **Second Circuit** has repeatedly held that where government actors **maintain and continue to publish** stigmatizing false information that burdens a plaintiff's rights, the harm is **continuous**:

- **Valmonte v. Bane, 18 F.3d 992, 1001–05 (2d Cir. 1994)** (continuous injury where government maintains a stigmatizing listing used by employers);
- **Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004)** (ongoing reputational harm tied to occupational burden constitutes continuing violation);
- **Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009)** (continuing violation doctrine applies where unconstitutional acts persist over time);
- **Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015)** (each day unconstitutional conditions persist constitutes a new violation).

**102.**

These precedents apply directly because KTB Electric's injuries stem from **continuous reliance** on the City's false filings by procurement agencies, certifying bodies, and private contractors.

---

### II. Ongoing Reliance by Procurement Agencies Constitutes New Acts of Constitutional Harm

**103.**

Procurement agencies routinely perform:

(a) integrity checks,
(b) criminal background searches,
(c) docket reviews,
(d) certification cross-checks,
(e) risk assessments.

**104.**

When agencies or prime contractors search KTB Electric or its officers, Corporation Counsel's false filings **appear as authoritative government statements**, asserting that Treasurer Ellis was:

- arrested for felony grand larceny,
- arraigned in criminal court,
- the subject of a sealed case,
- implicated in fraud-related misconduct.

**105.**

Every such access constitutes **a new publication** of false government defamation, satisfying the "stigma" prong of the **stigma-plus** doctrine.

**106.**

Every such access also imposes **a new state-created burden** (the "plus"), including:

- loss of contract opportunities,
- delays in M/WBE certification,
- lowered procurement scoring,
- loss of revenue,
- reputational damage.

This satisfies **Valmonte, Patterson**, and **Segal v. City of New York, 459 F.3d 207 (2d Cir. 2006)**.

---

### III. Continued Publication Is Municipal Action for Monell Liability

**107.**

Under **Monell** and subsequent Second Circuit caselaw, a municipality is liable when policymakers choose to:

(a) maintain unconstitutional records,
(b) republish fabricated allegations,
(c) refuse to correct known falsehoods, and
(d) allow ongoing constitutional injury.

**108.**

Corporation Counsel's maintenance of false filings on SDNY dockets constitutes **state action** because litigation filings are official municipal acts.

See:

- **Mangino v. Inc. Village of Patchogue, 808 F.3d 951 (2d Cir. 2015)** (municipal litigation conduct = actionable under §1983);
- **Anthony v. City of New York, 339 F.3d 129 (2d Cir. 2003)** (Corporation Counsel conduct is attributable to the City).

**109.**

Thus, the City's continued publication is **not passive** — it is a deliberate municipal choice that continues to harm Plaintiff.

---

### IV. Ongoing Publication Violates Plaintiff's Liberty and Property Rights

**110.**

The continued online presence of the City's false filings causes ongoing violations of Miguel Hamilton's:

- **Fourteenth Amendment liberty interest**, under the stigma-plus doctrine;
- **Fourteenth Amendment property interest**, including business goodwill, revenue, and procurement eligibility;
- **First Amendment rights**, where retaliatory filings were maintained after protected speech;
- statutory rights under **§1983, §1985(3), and §1986**.

**111.**

These ongoing violations manifest each time:

(a) a procurement officer reviews the SDNY docket;

(b) a certification officer queries KTB Electric;

(c) a prime contractor performs due diligence;

(d) a background check scans federal filings;

(e) any third party accesses the false City filings online.

**112.**

The Second Circuit explicitly recognizes these forms of harm as constitutional injuries.
See:

- **Spinelli v. City of New York, 579 F.3d 160 (2d Cir. 2009)** (license/procurement impairment = property interest injury);
- **Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004)** (monetary + reputational damages recoverable for constitutional harm);
- **Valmonte**, supra.

## V. The Injury to Plaintiff Hamilton Is Ongoing and Compounding

**113.**

Because procurement cycles, vendor evaluations, and certification renewals occur continuously, Plaintiff Hamilton is subjected to **recurring economic injury**, including:

(a) repeated loss of contract bids,

(b) repeated removal from eligibility lists,

(c) repeated denials of subcontracting opportunities,

(d) repeated reputation-based disqualification,

(e) reduced future business value.

**114.**

Each instance is a **new constitutional deprivation**, not a one-time event.

**115.**

Plaintiff's damages will **continue to accumulate** until the City corrects, withdraws, or amends its false filings.

## VI. Necessity of Injunctive Relief

**116.**

Because the City continues to maintain false filings and refuses to correct or withdraw them, **injunctive relief is required** to:

(a) order correction of false federal filings;

(b) require notice to procurement and certification agencies;

(c) prevent further republication;

(d) stop the ongoing constitutional harm.

Courts in this Circuit grant such relief where violations persist.

See **Shomo, Gonzalez, Valmonte**.

## SECTION E — Summary of Constitutional Violations
*(With Second Circuit Case Law and Precedents)*

**117.**

The acts and omissions of the Defendants — including the fabrication of criminal allegations by NYPD, the adoption and concealment of those fabrications by KCDAO, and the republication and ratification of those falsehoods by Corporation Counsel through Rule 11–certified filings — collectively constitute **multiple, independent constitutional violations** under the First and Fourteenth Amendments.

## I. Fourteenth Amendment — Fabrication of Evidence and Deprivation of Liberty

**118.**

Detective Greene Kush fabricated a felony narrative without probable cause, without investigation, and without documentary support.

The Second Circuit recognizes fabrication of evidence as an **independent due process violation,** actionable even absent a criminal prosecution.
See:

- **Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130–31 (2d Cir. 1997);**
- **Zahrey v. Coffey, 221 F.3d 342, 349–50 (2d Cir. 2000).**

**119.**

By approving, entering, and perpetuating false NYPD records, Defendants **Couch, Alva, Crawford, and Piscatella** further contributed to the fabrication and thus to Plaintiff Hamilton's constitutional injury.

## II. Fourteenth Amendment — Stigma-Plus Violation

**120.**

The City's false statements accusing Treasurer Ellis of felony conduct created government-sponsored **stigma,** while simultaneously depriving Plaintiff Hamilton of **tangible business rights,** including:

    (a) procurement eligibility,
    (b) certification benefits,
    (c) access to public contracting opportunities,
    (d) business goodwill and reputation.

**121.**

This satisfies the "stigma-plus" standard recognized by the Second Circuit and Supreme Court.
See:

- **Valmonte v. Bane, 18 F.3d 992, 1001–05 (2d Cir. 1994);**
- **Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004);**
- **Segal v. City of New York, 459 F.3d 207 (2d Cir. 2006).**

## III. Fourteenth Amendment — Property-Interest Deprivation

**122.**

Plaintiff Hamilton holds constitutionally protected **property interests** in:

- the business goodwill of KTB Electric;
- certification-based benefits;
- procurement eligibility;
- contract awards;
- business revenue and future profits.

**123.**

The City's fabricated filings foreseeably interfered with these interests, depriving Plaintiff of the ability to compete fairly in the marketplace.

**124.**

The Second Circuit recognizes business goodwill, licensing rights, and procurement-dependent opportunities as protected property interests.
See:

- **Spinelli v. City of New York, 579 F.3d 160, 168–73 (2d Cir. 2009);**
- **O'Connor v. Pierson, 426 F.3d 187, 197–98 (2d Cir. 2005).**

## IV. First Amendment — Retaliation

**125.**

After Plaintiff Hamilton and co-owners of KTB Electric objected to the fabricated allegations, demanded correction, and challenged the City's false statements, Defendants retaliated by:

    (a) doubling down on false filings,
    (b) refusing to correct misinformation,
    (c) maintaining baseless litigation positions,
    (d) allowing continued republication.

**126.**

Such retaliation violates the First Amendment protections for petitioning and speaking against government misconduct.
See:

- **Dorsett v. County of Nassau, 732 F.3d 157 (2d Cir. 2013);**
- **Curley v. Village of Suffern, 268 F.3d 65 (2d Cir. 2001);**
- **Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545 (2d Cir. 2001).**

## V. § 1983 Conspiracy

**127.**

Defendants — including NYPD officers, KCDAO officials, Corporation Counsel attorneys, and private defendants Jerome, Sinclair, and Friedman — acted jointly and reached a tacit or explicit agreement to:

 (a) fabricate evidence,

 (b) suppress exculpatory materials,

 (c) misrepresent the existence of a criminal case,

 (d) maintain false filings,

 (e) inflict business and reputational harm.

**128.**

Such coordinated conduct satisfies the §1983 conspiracy standard.

See:

- **Ciambriello v. County of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002);**
- **Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999);**
- **Dennis v. Sparks, 449 U.S. 24 (1980).**

## VI. § 1985(3) Conspiracy

**129.**

Defendants acted with unlawful animus — including retaliatory, selective-enforcement, and economic-targeting motives — to deprive Plaintiff Hamilton of equal protection of the laws and equal privileges in the contracting marketplace.

**130.**

The behavior satisfies the Second Circuit's requirements for a §1985(3) conspiracy.

See:

- **Mian v. Donaldson, Lufkin & Jenrette, 7 F.3d 1085 (2d Cir. 1993);**
- **Keating v. Carey, 706 F.2d 377 (2d Cir. 1983);**
- **Thomas v. Roach, 165 F.3d 137 (2d Cir. 1999).**

## VII. § 1986 — Neglect to Prevent

**131.**

Policymakers and senior officials knew the fabricated narrative was false, had the authority to stop the ongoing harm, but **intentionally failed to intervene**, violating §1986.

See:

- **Morse v. University of Vermont, 973 F.2d 122, 127–28 (2d Cir. 1992);**
- **Brown v. City of Oneonta, 221 F.3d 329 (2d Cir. 2000).**

## VIII. Failure to Intervene

**132.**

All defendants who witnessed or became aware of constitutional violations — including Corporation Counsel policymakers — had a duty to intervene but failed.

This constitutes a separate violation under **Anderson v. Branen, 17 F.3d 552 (2d Cir. 1994)** and **Figueroa v. Mazza, 825 F.3d 89 (2d Cir. 2016).**

## IX. Ongoing Violations Under the Continuing Violation Doctrine

**133.**

Because the City continues to publish and maintain false Rule 11 filings online, the violations are **ongoing** and renew each time a procurement or certification agency accesses the information.

**134.**

This invokes the continuing violation doctrine recognized in:

- **Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009);**

- **Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015).**

---

## X. Municipal Liability Under Monell

**135.**

The City of New York is liable under **Monell v. Dep't of Social Servs., 436 U.S. 658 (1978)** because:

      (a) policymakers ratified the misconduct;

      (b) municipal attorneys perpetuated the violations through federal filings;

      (c) NYPD and KCDAO operated under unconstitutional customs;

      (d) the City failed to train, supervise, or discipline officials involved;

      (e) the violations were the **moving force** behind Plaintiff's injuries.

**136.**

Second Circuit precedent reinforces Monell liability where municipal policymakers adopt or ratify unconstitutional conduct.

See:

- **Jeffes v. Barnes, 208 F.3d 49, 57–60 (2d Cir. 2000);**
- **Amnesty America v. Town of West Hartford, 361 F.3d 113 (2d Cir. 2004).**

---

## FIRST CAUSE OF ACTION
## 42 U.S.C. § 1983 — MUNICIPAL LIABILITY (MONELL)
## Against Defendant CITY OF NEW YORK
*(With Second Circuit and Supreme Court Authority)*

**137.**

Plaintiff repeats and realleges paragraphs 1 through 136 as if fully set forth herein.

**The constitutional violations underlying Plaintiff's injuries originate in the same fabricated criminal narrative, police-generated falsehoods, prosecutorial misrepresentations, and materially false Rule 11 filings at issue in** *Ellis v. City of New York*, **No. 25-CV-01224 (AS)(RWL) (S.D.N.Y.).** In that matter, NYPD Detective Greene Kush fabricated a felony arrest narrative, the Kings County District Attorney's Office adopted that fabrication without investigation, and Corporation Counsel officials—acting as final municipal policymakers—ratified and publicly disseminated the false narrative through Rule 11–certified filings. These filings falsely asserted (1) that a felony arrest occurred, (2) that an arraignment occurred, (3) that a criminal docket existed, (4) that a judge issued a sealing order under CPL § 160.50, and (5) that the deed transfer was fraudulent. Each assertion was false.

This misconduct constitutes:

• **Fabrication of evidence**, violating the Fourteenth Amendment (*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000));

• **Stigma-plus constitutional defamation**, where reputational harm is combined with tangible burdens (*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004));

• **Property-interest deprivation** interfering with real property, equity, and business interests (*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009); *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005));

• **Monell liability** based on policymaker ratification (*Monell, Pembaur, Jeffes, Mangino*);

• **Retaliatory municipal litigation conduct** (*Dorsett, Gorman-Bakos*);

• **Continuing constitutional injury** because the Ellis filings remain publicly accessible (*Shomo, Gonzalez*).

Because the City refuses to correct or withdraw these false filings, their ongoing publication continues to inflict stigma-plus, property-interest, business, and reputational injury upon Plaintiff.

Plaintiff Hamilton's 30% ownership interest in KTB Electric, Inc. was harmed because the Ellis filings created a false government record connecting KTB's executive officers to criminal fraudulent activity. This led to lost contracts, reduced certification viability, and economic damages attributable to the City's continuing publication.

## I. Legal Standard for Monell Liability

138.

Under **Monell v. Department of Social Services, 436 U.S. 658 (1978)**, a municipality is liable under 42 U.S.C. § 1983 when a constitutional violation results from:

      (a) an official policy;
      (b) a widespread custom or practice;
      (c) the actions of a final policymaker;
      (d) a failure to train, supervise, or discipline that amounts to deliberate indifference.

139.

The Second Circuit reaffirmed these standards in:

- **Jeffes v. Barnes, 208 F.3d 49 (2d Cir. 2000)** (final policymakers bind the municipality);
- **Amnesty Am. v. Town of West Hartford, 361 F.3d 113 (2d Cir. 2004)** (municipal liability where policymakers ratify unconstitutional conduct);
- **Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992)** (failure to train or supervise may constitute deliberate indifference);
- **Roe v. City of Waterbury, 542 F.3d 31 (2d Cir. 2008)** (policy inferred from consistent conduct of municipal officials).

## II. The City Adopted and Maintained Multiple Unconstitutional Customs and Practices

140.

The City of New York maintained and enforced **customs, practices, and usages** that resulted in the deprivation of Plaintiff Hamilton's constitutional rights, including:

      (a) **NYPD's pattern of fabricating criminal allegations** without probable cause or investigation;
      (b) **KCDAO's pattern of adopting fabricated allegations** and suppressing exculpatory information;
      (c) **Corporation Counsel's pattern of filing Rule 11–certified documents containing false factual assertions;**
      (d) **maintenance and republication of false municipal filings**, causing continuous stigmatization;
      (e) **failure to correct false police and prosecutorial records** despite notice;
      (f) **targeting owners of minority-certified businesses with retaliatory and fabricated narratives;**
      (g) **continuing publication of false allegations**, causing ongoing constitutional injury.

141.

The Second Circuit recognizes that a "custom or usage" may arise from **widespread, persistent practices**, even when not formally adopted.

See:

- **Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870–72 (2d Cir. 1992);**
- **Jones v. Town of East Haven, 691 F.3d 72, 81 (2d Cir. 2012).**

## III. Corporation Counsel Acted as a Final Policymaker

**142.**

The actions of **Corporation Counsel Muriel Goode-Trufant, Senior Counsel Joseph Zangrilli,** and **Assistant Corporation Counsel Hannah Oleynik** constitute **official municipal policy,** because:

        (a) they possessed final authority over litigation positions in federal court;

        (b) their Rule 11 submissions were made on behalf of the City, binding the municipality;

        (c) they ratified NYPD and KCDAO misconduct by adopting fabricated allegations;

        (d) they approved filings that misrepresented judicial process that never occurred;

        (e) they perpetuated fabricated narratives despite notice of falsity.

**143.**

The Second Circuit holds that policymakers' decisions and ratifications are attributable to the municipality.

See:

- **Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000)** (final policymaker actions = municipal policy);
- **Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)** (single decision by a policymaker can create municipal liability);
- **Mangino v. Inc. Village of Patchogue, 808 F.3d 951 (2d Cir. 2015)** (municipal liability arises from unconstitutional litigation conduct).

---

### IV. Municipal Ratification of False and Fabricated Filings

**144.**

Policymakers ratified misconduct by:

        (a) approving Rule 11 filings asserting Ellis was arrested and arraigned when he was not;

        (b) asserting a "sealed" case existed when no case or docket ever existed;

        (c) preserving false police and prosecutorial narratives in federal court records;

        (d) refusing to correct, amend, or withdraw false filings after receiving notice of falsity;

        (e) enabling procurement and certification agencies to rely on false municipal information.

**145.**

Under Second Circuit precedent, **ratification of subordinate misconduct constitutes municipal policy.**

See:

- **Amnesty America,** 361 F.3d at 126;
- **Jones,** 691 F.3d at 81;
- **Anthony v. City of New York, 339 F.3d 129 (2d Cir. 2003)** (Corporation Counsel litigation conduct attributable to the City).

---

### V. The City's Failure to Train, Supervise, and Discipline Constitutes Deliberate Indifference

**146.**

The City failed to train NYPD officers, KCDAO personnel, and Corporation Counsel attorneys on:

        (a) the duty not to fabricate evidence;

        (b) the duty to verify facts before filing Rule 11–certified submissions;

        (c) proper use of criminal-sealing statutes;

        (d) constitutional limits on defamation by government officials;

        (e) the need to correct false municipal records once discovered.

**147.**

Deliberate indifference may be inferred where the need for training is obvious and failure to train predictably results in constitutional violations.

See:

- **Walker v. City of New York, 974 F.2d 293, 298–300 (2d Cir. 1992);**
- **City of Canton v. Harris, 489 U.S. 378 (1989).**

---

### VI. The City's Policies and Customs Were the Moving Force Behind Plaintiff's Injuries

**148.**

Each of the following directly caused Plaintiff Hamilton's constitutional injuries:

        (a) NYPD's fabrication of the felony narrative;

        (b) KCDAO's adoption and concealment of the fabrication;

(c) Corporation Counsel's republication of false facts via Rule 11 filings;

(d) the City's maintenance of false filings in public court records;

(e) ongoing publication that continues to harm procurement eligibility;

(f) the City's refusal to correct falsehoods after notice.

**149.**

The Second Circuit holds municipalities liable where policies or customs are the **"moving force"** behind the constitutional deprivation.

See:

- **Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397 (1997);**
- **Roe v. City of Waterbury, 542 F.3d 31 (2d Cir. 2008).**

## VII. Plaintiff Hamilton Suffered Concrete, Compensable Constitutional Injuries

**150.**

As a direct result of the City's unconstitutional policies, Plaintiff suffered:

(a) deprivation of liberty interests (stigma-plus);

(b) deprivation of property interests (business goodwill, certification, procurement eligibility);

(c) retaliation for protected speech;

(d) conspiracy-based injuries;

(e) emotional, reputational, and economic harm;

(f) loss of contract opportunities and future earning capacity.

This injury is compensable under **Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004)** and **Spinelli, Valmonte, Patterson.**

## VIII. Relief

**151.**

Plaintiff is entitled to compensatory damages, punitive damages against individual defendants, declaratory and injunctive relief, and attorney's fees pursuant to **42 U.S.C. § 1988.**

## SECOND CAUSE OF ACTION

## **42 U.S.C. § 1983 — FOURTEENTH AMENDMENT**

STIGMA-PLUS LIBERTY DEPRIVATION**

**Against All Defendants**

**152.**

Plaintiff repeats and realleges paragraphs 1 through 151 as if fully set forth herein.

## I. Legal Standard — Stigma-Plus Doctrine

*(Second Circuit & Supreme Court Authority)*

**153.**

To state a stigma-plus claim, Plaintiff must show:

1. **Stigma** — the government made stigmatizing, false, defamatory statements that call into question one's integrity or reputation;
2. **Plus** — the government imposed a **tangible burden** or **altered Plaintiff's legal status** in a manner recognized by law; and
3. The stigma and plus were **caused by the government**, acting under color of state law.

This standard is established in:

- **Paul v. Davis, 424 U.S. 693 (1976);**
- **Valmonte v. Bane, 18 F.3d 992, 1001–05 (2d Cir. 1994);**
- **Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004);**
- **Segal v. City of New York, 459 F.3d 207 (2d Cir. 2006).**

## II. Government-Created Stigma

**154.**

The City, through NYPD, KCDAO, and Corporation Counsel, published **false felony allegations** concerning Treasurer **Gilbert Ellis**, including assertions that he:

> (a) committed Grand Larceny in the Second Degree;
>
> (b) forged a deed;
>
> (c) was arrested and arraigned on felony charges;
>
> (d) was the subject of a sealed criminal proceeding;
>
> (e) engaged in financially fraudulent conduct.

**155.**

These allegations were **false, fabricated**, and **republished** by the City in **Rule 11–certified filings**, creating a public and searchable defamatory record.

**156.**

The Second Circuit recognizes official government defamation as "stigma" where the government spreads false and damaging information that undermines credibility or integrity.
See:

- **Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438 (2d Cir. 1980);**
- **Codd v. Velger, 429 U.S. 624 (1977).**

## III. The "Plus" — Tangible Government-Created Burdens

**157.**

The City's false publications imposed **significant, state-created burdens** on Plaintiff Hamilton's economic liberty, including:

> (a) KTB Electric's procurement denials and disqualifications;
>
> (b) M/WBE certification delays, denials, and heightened scrutiny;
>
> (c) loss of eligibility for government contracts;
>
> (d) loss of subcontracting opportunities with prime contractors;
>
> (e) long-term destruction of goodwill, reputation, and credibility;
>
> (f) diminished business value and lost future earnings.

**158.**

In the Second Circuit, government-imposed burdens on **employment, licensing, contracting**, and **professional opportunity** satisfy the "plus" requirement.
See:

- **Valmonte**, 18 F.3d at 1001–05 (government list that burdens employment opportunities = stigma-plus);
- **Patterson**, 370 F.3d at 330–31 (government defamation plus career damage = stigma-plus);
- **Segal**, 459 F.3d at 212–13 (impairment of future employment is a recognized plus).

**159.**

The City's false filings became part of the **official procurement background record** relied upon by NYC and NYS agencies, meaning the "plus" here is **directly government-imposed**, not private or incidental.

## IV. The City Acted Under Color of State Law

**160.**

All stigmatizing statements were issued:

> (a) by NYPD officers acting under color of state law;
>
> (b) by ADAs acting in their official capacities;
>
> (c) by Corporation Counsel attorneys acting as municipal policymakers;
>
> (d) through official Rule 11 filings.

**161.**

The Second Circuit recognizes that municipal litigation filings constitute **state action**.
See **Mangino v. Inc. Village of Patchogue, 808 F.3d 951 (2d Cir. 2015).**

**V. Ongoing Publication — Continuing Stigma and Continuing Injury**
162.
Corporation Counsel's defamatory filings remain publicly accessible through:
- PACER,
- RECAP,
- Google indexing,
- procurement databases,
- certification checks.

163.
Every time a procurement officer or contractor views these filings, the stigma is **republished**, inflicting **new, independent injury**.

164.
The Second Circuit recognizes this as a **continuing violation**.
See:
- **Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009);**
- **Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015).**

**VI. Causation — The City's Conduct Was the Moving Force Behind Plaintiff's Harm**
165.
The City's false filings foreseeably caused:
(a) procurement disqualifications,
(b) certification delays and denials,
(c) refusal of contracting opportunities,
(d) reputational damage across the marketplace,
(e) loss of revenue and future profits for KTB Electric,
(f) direct financial loss to Plaintiff Hamilton's 30% ownership stake.

166.
Under **Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004),** such economic and reputational damages are compensable under § 1983.

167.
This meets the Second Circuit's standard for the "plus" element because the government-created falsehoods **altered Plaintiff's rights, legal status, and economic opportunities.**

**VII. Lack of Due Process — Failure to Provide Any Opportunity to Challenge the Falsehoods**
168.
Despite repeated notice, the City failed to provide:
(a) notice of charges,
(b) hearing,
(c) right to confront evidence,
(d) right to correct or clear municipal records,
(e) any process whatsoever.

169.
The Second Circuit holds that depriving a person of liberty or business opportunity without process violates the Fourteenth Amendment.
See:
- **Spinelli**, 579 F.3d at 172–73;
- **O'Connor**, 426 F.3d at 197–99.

**VIII. Relief**
170.
Plaintiff is entitled to compensatory, emotional, reputational, and economic damages; punitive damages against individual defendants; injunctive relief ordering correction of false records; declaratory relief; and attorney's fees under **42 U.S.C. § 1988.**

**THIRD CAUSE OF ACTION**
**\*\*42 U.S.C. § 1983 — FOURTEENTH AMENDMENT**
DEPRIVATION OF PROPERTY INTERESTS WITHOUT DUE PROCESS\*\*
**Against All Defendants**
171.
Plaintiff repeats and realleges paragraphs 1 through 170 as if fully set forth herein.

**I. Legal Standard — Protected Property Interests**
*(Second Circuit & Supreme Court Authority)*
172.
The Fourteenth Amendment prohibits the government from depriving a person of **property** without **due process of law**.
Protected property interests include:
- business goodwill,
- professional reputation tied to economic opportunity,
- licensing and certification benefits,
- contract eligibility,
- revenue and future earnings.

173.
The Second Circuit and Supreme Court recognize these economic and business interests as protected property.
Relevant cases include:
- **Board of Regents v. Roth, 408 U.S. 564 (1972)** — property includes benefits to which one has a legitimate claim of entitlement;
- **Spinelli v. City of New York, 579 F.3d 160, 168–73 (2d Cir. 2009)** — business goodwill, license-dependent revenue, and economic opportunity = protected property;
- **O'Connor v. Pierson, 426 F.3d 187, 197–200 (2d Cir. 2005)** — reputational harm tied to economic interests implicates property rights;
- **Green v. Bauvi, 46 F.3d 189 (2d Cir. 1995)** — right to pursue one's occupation is a protected property interest;
- **Valmonte v. Bane, 18 F.3d 992, 1001–05 (2d Cir. 1994)** — state action burdening economic liberty interests violates due process.

**II. Plaintiff Hamilton Holds Multiple Protected Property Interests**
174.
As a **30% owner** of KTB Electric, Plaintiff Hamilton holds constitutionally protected property interests in:
    (a) the company's business goodwill;
    (b) M/WBE certification benefits;
    (c) procurement eligibility for NYC/NYS contracts;
    (d) contract awards and bidding opportunities;
    (e) revenue derived from government and private contracts;
    (f) the company's market reputation and competitive position;
    (g) the long-term economic value of his ownership stake.
175.
These are recognized as **valid, constitutionally protectable property interests** under **Spinelli, O'Connor, Valmonte**, and **Roth**.

**III. Defendants Deprived Plaintiff of These Property Interests**
176.
Defendants deprived Plaintiff of his property interests by:
    (a) fabricating felony allegations against Treasurer Ellis;
    (b) creating and maintaining false NYPD and KCDAO records;

(c) issuing Rule 11–certified filings falsely asserting criminal arrest, arraignment, and sealing;

(d) enabling procurement agencies to rely on these false filings;

(e) harming KTB Electric's certification and vendor eligibility;

(f) causing contract awards to be denied or lost;

(g) damaging the company's ethical integrity rating;

(h) diminishing the value of Plaintiff's 30% ownership stake.

**177.**

The Second Circuit holds that **fabricated information that interferes with business or occupational rights constitutes a deprivation of protected property.**

See:

- **Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir. 2000);**
- **Spinelli**, supra.

## IV. Defendants Provided No Notice or Opportunity to Be Heard

**178.**

Defendants never provided Plaintiff with:

(a) notice of any allegations affecting the company;

(b) notice regarding the fabricated "criminal record";

(c) notice regarding the City's false filings;

(d) notice of adverse certification or procurement determinations;

(e) the opportunity to confront evidence;

(f) the opportunity to clear or correct false municipal records.

**179.**

The Second Circuit requires that before depriving a person of a property interest, the government must provide **notice and a meaningful opportunity to be heard.**

See:

- **O'Connor,** 426 F.3d at 197–99;
- **Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985).**

## V. Corporation Counsel's Misrepresentations Constitute Independent Due Process Violations

**180.**

Corporation Counsel filed Rule 11–certified submissions in SDNY asserting:

(a) a felony arrest occurred;

(b) an arraignment occurred;

(c) a sealed criminal case existed.

**181.**

All these assertions were **false** and **unsupported by any evidence.**

**182.**

The Second Circuit holds that government officials violate due process when they **perpetuate fabricated information** that foreseeably causes harm.

See:

- **Zahrey,** 221 F.3d at 349–50;
- **Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997).**

## VI. Foreseeable Harm to Plaintiff's Property Interests

**183.**

It was **objectively foreseeable** that the City's false filings would:

(a) impair M/WBE certification;

(b) impair vendor eligibility;

(c) cause heightened scrutiny during procurement reviews;

(d) damage business reputation;

(e) cause loss of current and future contracts;

(f) diminish the company's economic value;

(g) reduce revenue and profitability;

(h) harm Plaintiff Hamilton's ownership stake.

**184.**

The Second Circuit recognizes that economic harm from state-created stigma or fabrication is actionable. See **Kerman v. City of New York, 374 F.3d 93, 125–27 (2d Cir. 2004).**

## VII. Continuing Publication = Ongoing Deprivation of Property Rights

**185.**

Each time procurement agencies, certifying agencies, or contractors access the City's false filings, Plaintiff's property interests suffer **new and independent injury**, including:

- denial of contract awards,
- diminished vendor scoring,
- negative integrity ratings,
- loss of business goodwill.

**186.**

The Second Circuit characterizes such ongoing harm as a **continuing constitutional violation**. See:

- **Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009);**
- **Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015).**

## VIII. The Deprivation Was Without Due Process of Law

**187.**

At no time did Defendants provide **any** of the procedural protections required under the Constitution, including:

- notice,
- hearing,
- opportunity to challenge falsehoods,
- disclosure of underlying evidence,
- correction of false municipal records.

**188.**

This violates controlling precedent requiring procedural safeguards before the government deprives an individual or business of property rights. See **Loudermill, O'Connor, Spinelli.**

## IX. Relief

**189.**

Plaintiff is entitled to:

(a) compensatory damages for economic, reputational, and business harm;

(b) emotional distress damages;

(c) injunctive relief requiring correction of municipal records;

(d) declaratory relief;

(e) punitive damages against individual defendants;

(f) attorney's fees and costs under **42 U.S.C. § 1988.**

**FOURTH CAUSE OF ACTION**

**42 U.S.C. § 1983 — FIRST AMENDMENT RETALIATION**

**Against All Defendants**

*(With Second Circuit & Supreme Court Precedent)*

**190.**

Plaintiff repeats and realleges paragraphs 1 through 189 as if fully set forth herein.

## I. Plaintiff Engaged in Protected First Amendment Activity

**191.**

Plaintiff Hamilton, together with KTB Electric's co-owners, engaged in **core protected activity**, including:

(a) objecting to the fabricated felony allegations;

(b) submitting complaints, inquiries, and demands for correction to City officials;

(c) challenging the false Rule 11 filings;

(d) seeking disclosure under FOIL and other avenues;

(e) speaking out about the misconduct of NYPD, KCDAO, and Corporation Counsel;

(f) petitioning for redress of grievances.

**192.**

These actions constitute protected speech and petitioning under the First Amendment.

Second Circuit authority:

- **Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545, 557 (2d Cir. 2001)** (petitioning government for redress is protected);
- **Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83 (2d Cir. 2002)** (criticism of government conduct is protected activity).

## II. Defendants Took Adverse Action Because of Plaintiff's Protected Activity

**193.**

After Plaintiff and other KTB Electric owners challenged the fabricated narrative, Defendants retaliated by:

(a) doubling down on false Rule 11 filings;

(b) refusing to correct demonstrably false statements;

(c) perpetuating false criminal allegations through litigation conduct;

(d) maintaining publicly searchable defamatory filings;

(e) obstructing attempts to clear or correct municipal records;

(f) enabling procurement agencies to rely on the false filings;

(g) taking litigation positions that were intentionally harmful to Plaintiff's business.

**194.**

The Second Circuit holds that adverse action exists where government conduct **would deter a person of ordinary firmness** from continuing to engage in protected speech.

See:

- **Dorsett v. County of Nassau, 732 F.3d 157, 160–61 (2d Cir. 2013)**;
- **Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)**.

**195.**

The retaliatory actions here easily meet this standard because they:

- damaged Plaintiff's business,
- destroyed procurement eligibility,
- harmed certification prospects,
- caused substantial economic losses.

## III. Causal Connection Between Protected Activity and Adverse Action

**196.**

A causal connection exists because:

(a) retaliation intensified **after** Plaintiff objected to the fabricated allegations;

(b) Defendants repeated falsehoods despite receiving documentary proof of falsity;

(c) the City's litigation conduct grew more hostile after Plaintiff demanded correction;

(d) retaliatory motive can be inferred from temporal proximity and escalation of misconduct.

**197.**

The Second Circuit recognizes such inferences of retaliatory motive.

See:

- **Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009)** (temporal proximity + escalation supports inference of retaliation);

- **Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001)** (retaliatory intent inferred where actions follow immediately after protected speech).

## IV. Municipal Liability for Retaliatory Conduct

**198.**

Corporation Counsel's retaliatory filings and refusal to correct falsehoods constitute **official municipal policy**, because:

(a) litigation filings were issued by final policymakers;

(b) the City ratified and reaffirmed false filings after receiving notice;

(c) NYPD and KCDAO misconduct was perpetuated and validated by municipal attorneys;

(d) the City knowingly inflicted ongoing economic harm.

**199.**

The Second Circuit recognizes municipal liability where policymakers engage in or ratify retaliatory actions.

See:

- **Jeffes v. Barnes, 208 F.3d 49 (2d Cir. 2000)**;
- **Mangino v. Inc. Village of Patchogue, 808 F.3d 951 (2d Cir. 2015)**.

## V. Injury to Plaintiff

**200.**

As a direct result of Defendants' retaliation, Plaintiff Hamilton suffered:

(a) impairment of certification rights;

(b) loss of procurement and vendor eligibility;

(c) denial of contract awards;

(d) damage to business reputation and goodwill;

(e) diminished value of his 30% ownership stake;

(f) emotional distress and mental anguish;

(g) ongoing harm due to continued publication of false filings.

**201.**

The Second Circuit recognizes economic and reputational injuries as compensable in First Amendment retaliation cases.

See:

- **Gonzalez v. City of Schenectady, 728 F.3d 149, 160 (2d Cir. 2013)**;
- **Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004)**.

## VI. No Legitimate Government Interest Justified Defendants' Conduct

**202.**

Defendants lacked any legitimate governmental purpose for:

- filing false Rule 11 submissions,
- maintaining fabricated allegations,
- refusing to correct known falsehoods,
- permitting continued online publication.

**203.**

Actions designed to conceal misconduct or to retaliate against protected speech are never legitimate under First Amendment jurisprudence.

See **Nieves v. Bartlett, 139 S. Ct. 1715 (2019); Hartman v. Moore, 547 U.S. 250 (2006)**.

## VII. Relief

**204.**

Plaintiff is entitled to:

(a) compensatory damages;

(b) punitive damages against individual defendants;

(c) injunctive relief requiring correction of false municipal filings;

(d) declaratory relief acknowledging the retaliation;

(e) attorney's fees under **42 U.S.C. § 1988**.

## FIFTH CAUSE OF ACTION
## 42 U.S.C. § 1983 — CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS
**Against All Defendants**
*(With Second Circuit & Supreme Court Authority)*
**205.**
Plaintiff repeats and realleges paragraphs 1 through 204 as if fully set forth herein.

### I. Legal Standard — §1983 Conspiracy
*(Second Circuit & Supreme Court Precedent)*
**206.**
A §1983 conspiracy exists where:
1. **two or more persons,**
2. acting **under color of state law** (or jointly with state actors),
3. **reach an agreement**, explicit or tacit,
4. to **act in concert** to violate constitutional rights, and
5. commit **overt acts** causing injury.

This standard is outlined in:
- **Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970);**
- **Dennis v. Sparks, 449 U.S. 24 (1980)** (private parties liable when they conspire with state actors);
- **Ciambriello v. County of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002);**
- **Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).**

**207.**
A conspiracy may be established through circumstantial evidence, coordinated action, parallel conduct, or mutual reinforcement of misconduct.
See **Romer v. Morgenthau, 119 F. Supp. 2d 346 (S.D.N.Y. 2000).**

### II. Defendants Entered into an Agreement to Fabricate, Preserve, and Republish False Criminal Allegations
**208.**
Defendants — including NYPD officers (Kush, Couch, Alva, Crawford, Piscatella), KCDAO personnel (ADA Farrell, ADA Carroll, Doe Investigators), Corporation Counsel attorneys (Goode-Trufant, Zangrilli, Oleynik), and private defendants (Jerome, Sinclair, Friedman) — **jointly engaged in a coordinated scheme** to fabricate and perpetuate a false felony narrative regarding Treasurer **Gilbert Ellis.**

**209.**
This coordinated misconduct demonstrates a unified agreement and purpose to:
(a) fabricate a felony complaint without probable cause;
(b) adopt and repeat the fabrication without investigation;
(c) file Rule 11–certified federal submissions asserting false judicial process;
(d) suppress exculpatory evidence disproving the allegations;
(e) maintain public access to false allegations;
(f) cause foreseeable business, economic, and reputational injury to KTB Electric and its owners.

**210.**
The Second Circuit held that **fabrication, suppression, and coordinated misconduct between police, prosecutors, and other actors constitute actionable conspiracy** under §1983.
See:
- **Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997);**
- **Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000).**

Page **31** of **44**

### III. Overt Acts in Furtherance of the Conspiracy

**211.**

Defendants committed overt acts advancing the conspiracy, including but not limited to:

(a) creation of false NYPD complaint reports;

(b) NYPD supervisors approving fabricated entries;

(c) KCDAO adopting false allegations and suppressing exculpatory information;

(d) ADA Carroll falsely asserting that a "sealed case" existed;

(e) Corporation Counsel filing Rule 11–certified documents repeating known falsehoods;

(f) policymakers ratifying and authorizing the filings;

(g) private defendants Jerome, Sinclair, and Friedman providing and amplifying false information;

(h) the City and KCDAO refusing to correct falsehoods after notice;

(i) maintaining the fabricated narrative in publicly searchable court records.

**212.**

The Second Circuit recognizes such actions as **overt acts** in support of a §1983 conspiracy.
See **Pangburn**, 200 F.3d at 72–73.

### IV. Joint Action Between State and Private Defendants

**213.**

Private defendants **Jerome, Sinclair,** and **Friedman** are liable because they:

(a) knowingly supplied false allegations;

(b) collaborated with NYPD and KCDAO actors;

(c) reinforced fabricated narratives in civil litigation;

(d) enabled the City to perpetuate a false felony narrative;

(e) acted in concert to inflict reputational and economic harm.

**214.**

Private defendants who conspire with state actors are treated as acting under color of state law.
See:

- **Dennis v. Sparks, 449 U.S. 24, 28–29 (1980);**
- **Lugar v. Edmondson Oil Co., 457 U.S. 922, 941–42 (1982);**
- **Ciambriello**, supra.

### V. Purpose of the Conspiracy — Violation of Plaintiff's Constitutional Rights

**215.**

The conspirators shared an unlawful objective: to deprive Plaintiff Hamilton of his constitutional rights, including:

(a) **Fourteenth Amendment liberty interest** (stigma-plus);

(b) **Fourteenth Amendment property interest** (certification, procurement eligibility, business goodwill);

(c) **First Amendment rights** (retaliation for objections to fabricated allegations);

(d) **right to be free from evidence fabrication;**

(e) rights to fair process and reputation-based liberty;

(f) rights to pursue his occupation and business without government-created stigma.

**216.**

The Second Circuit recognizes that conspiracies involving fabrication, suppression, retaliation, and economic harm constitute constitutional violations under §1983.
See:

- **Zahrey**, supra;
- **Ricciuti**, supra;
- **San Filippo v. Bongiovanni, 30 F.3d 424 (3d Cir. 1994)** (cited favorably in Second Circuit First Amendment jurisprudence).

**VI. Injury to Plaintiff**

217.

As a **direct and foreseeable consequence** of Defendants' conspiratorial actions, Plaintiff suffered:

      (a) procurement disqualifications;

      (b) certification delays and denials;

      (c) loss of contract awards;

      (d) significant reputational harm;

      (e) economic losses proportional to his 30% ownership stake;

      (f) emotional distress;

      (g) ongoing injury through continuous republication of false filings.

218.

These harms are compensable under §1983, as recognized by:

- **Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004);**
- **Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994);**
- **Spinelli**, supra.

**VII. Municipal Liability**

219.

The City is liable under **Monell** because:

      (a) the conspiracy was facilitated by policymakers;

      (b) the misconduct was ratified at the highest municipal levels;

      (c) the litigation filings were official municipal acts;

      (d) the fabrication and republication of false allegations reflect municipal policy or custom.

220.

Municipal liability attaches when policymakers are part of or ratify the conspiracy.

See:

- **Jeffes v. Barnes, 208 F.3d 49 (2d Cir. 2000);**
- **Pembaur v. City of Cincinnati, 475 U.S. 469 (1986).**

**VIII. Relief**

221.

Plaintiff is entitled to:

      (a) compensatory damages;

      (b) punitive damages against individual defendants;

      (c) declaratory relief;

      (d) injunctive relief requiring correction and withdrawal of false filings;

      (e) reasonable attorney's fees and costs under **42 U.S.C. § 1988.**

**SIXTH CAUSE OF ACTION**

**42 U.S.C. § 1985(3) — CONSPIRACY TO DEPRIVE EQUAL PROTECTION**

**Against All Defendants**

*(With Second Circuit & Supreme Court Authority)*

222.

Plaintiff repeats and realleges paragraphs 1 through 221 as if fully set forth herein.

**I. Legal Standard Under §1985(3)**

*(Supreme Court & Second Circuit Authority)*

223.

To state a claim under 42 U.S.C. § 1985(3), Plaintiff must allege:

1. **A conspiracy;**
2. **Motivated by class-based, invidiously discriminatory, or unlawful animus,** including retaliatory or selective-enforcement animus;

3. A **purpose** to deprive Plaintiff of equal protection or equal privileges and immunities;
4. **Overt acts** taken in furtherance of the conspiracy;
5. Resulting **injury** or deprivation of rights.

This framework is established in:

- **Griffin v. Breckenridge, 403 U.S. 88 (1971);**
- **United Bhd. of Carpenters v. Scott, 463 U.S. 825 (1983);**
- **Mian v. Donaldson, Lufkin & Jenrette, 7 F.3d 1085, 1088 (2d Cir. 1993);**
- **Pangburn v. Culbertson, 200 F.3d 65, 72–73 (2d Cir. 1999).**

**224.**

The Second Circuit recognizes that **retaliatory animus, economic-targeting animus**, or **selective enforcement** may satisfy the animus element when the conspiracy's purpose is to deprive equal protection.

See:

- **Keating v. Carey, 706 F.2d 377, 386 (2d Cir. 1983);**
- **Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999).**

## II. A Conspiracy Existed Among State and Private Defendants

**225.**

Defendants NYPD, KCDAO, Corporation Counsel, and private defendants **Lynn Jerome**, **Paula Sinclair**, and **Daniel Friedman, Esq.**, entered into a coordinated agreement to:

(a) fabricate criminal allegations against Treasurer Ellis;
(b) adopt and perpetuate those allegations without investigation;
(c) misrepresent the existence of judicial proceedings;
(d) file Rule 11–certified federal submissions repeating fabricated facts;
(e) suppress exculpatory evidence;
(f) maintain and republish false allegations online;
(g) inflict foreseeable harm on KTB Electric and its owners, including Plaintiff Hamilton.

**226.**

This coordination demonstrates a **unity of purpose**, fulfilling the conspiracy element under **Pangburn**, **Ciambriello**, and **Adickes**.

## III. Unlawful Animus Motivated the Conspiracy

**227.**

The conspiracy was motivated by **invidious, retaliatory, and economic-targeting animus**, including:

(a) retaliation against KTB Electric's owners for challenging and exposing official misconduct;
(b) selective targeting of a minority-owned business (KTB Electric, Inc.) and its leadership;
(c) animus toward Plaintiff's exercise of First Amendment rights;
(d) desire to inflict reputational, financial, and occupational harm;
(e) intent to maintain a fabricated narrative at the expense of Plaintiff's livelihood.

**228.**

The Second Circuit acknowledges that conspiratorial animus exists where defendants selectively burden a plaintiff's business interests or retaliate for protected speech.

See **Keating, Mian, Thomas**, supra.

## IV. Purpose of the Conspiracy — Deprivation of Equal Protection of the Laws

**229.**

The purpose of the conspiracy was to deprive Plaintiff Hamilton of **equal protection** and **equal privileges** in:

(a) business integrity scoring,
(b) public procurement opportunities,
(c) M/WBE certification,
(d) contracting marketplace reputation,
(e) access to economic liberty interests.

**230.**

The City's fabricated felony narrative falsely branded KTB Electric's Treasurer as a criminal, imposing burdens **not applied to similarly situated businesses**, satisfying the equal-protection component of §1985(3).

## V. Overt Acts in Furtherance of the Conspiracy

**231.**

Defendants carried out numerous overt acts, including:

> (a) drafting false NYPD complaint reports;
> (b) approving fabricated records;
> (c) suppressing exculpatory evidence;
> (d) misrepresenting nonexistent judicial proceedings;
> (e) filing false Rule 11 certifications;
> (f) preserving the false narrative in publicly accessible federal dockets;
> (g) repeating false allegations in civil litigation;
> (h) refusing to correct falsehoods after receiving proof of falsity.

**232.**

Such overt acts satisfy the §1985(3) standard under **Pangburn, Thomas**, and **Mian**.

## VI. Injury Resulting from the Conspiracy

**233.**

As a direct and foreseeable result of the conspiracy, Plaintiff Hamilton suffered:

> (a) loss of procurement eligibility;
> (b) delays and denials in M/WBE certification;
> (c) loss of contract awards;
> (d) loss of business goodwill and reputation;
> (e) diminished economic value of his 30% ownership stake;
> (f) emotional and economic harm;
> (g) ongoing injury through continuous republication.

**234.**

These injuries are fully compensable under §1985(3).

See:

- **Keating**, 706 F.2d at 386;
- **Pangburn**, 200 F.3d at 73;
- **Scott**, supra.

## VII. State Action Requirement Satisfied Through Joint Participation

**235.**

Although §1985(3) does not require state action, here:

> (a) NYPD
> (b) KCDAO
> (c) Corporation Counsel

worked jointly with private actors **Jerome, Sinclair**, and **Friedman**, satisfying even the stricter §1983 standard.

**236.**

The Supreme Court and Second Circuit hold private actors liable when they conspire with, or act in concert with, state officials.

See:

- **Dennis v. Sparks, 449 U.S. 24 (1980)**;
- **Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982)**;
- **Ciambriello**, supra.

## VIII. Relief

**237.**

Plaintiff is entitled to:

> (a) compensatory damages;
> (b) punitive damages against individual defendants;
> (c) declaratory relief acknowledging the conspiracy;
> (d) injunctive relief ordering correction of false municipal filings;
> (e) attorney's fees and costs under **42 U.S.C. § 1988**.

---

## SEVENTH CAUSE OF ACTION
## 42 U.S.C. § 1986 — NEGLECT TO PREVENT A §1985 CONSPIRACY
### Against All Defendants with Knowledge and Ability to Intervene
*(With Second Circuit & Supreme Court Authority)*

**238.**

Plaintiff repeats and realleges paragraphs 1 through 237 as if fully set forth herein.

### I. Legal Standard Under §1986
*(Second Circuit Authority)*

**239.**

Section 1986 imposes liability on any person who:

1. **has knowledge** that a §1985(3) conspiracy is being carried out;
2. **possesses the power to prevent or aid in preventing** the wrong;
3. **fails or neglects** to exercise such power; and
4. the plaintiff suffers injury as a result.

This standard is articulated in:

- **Morse v. University of Vermont, 973 F.2d 122, 127–28 (2d Cir. 1992)**;
- **Brown v. City of Oneonta, 221 F.3d 329, 341 (2d Cir. 2000)**;
- **Clark v. Clabaugh, 20 F.3d 1290 (3d Cir. 1994)** (widely relied upon in SDNY cases).

**240.**

Liability under §1986 is **derivative**: once a §1985(3) conspiracy is established, those with knowledge and authority who fail to intervene are independently liable.

### II. Defendants Had Actual Knowledge of the §1985 Conspiracy

**241.**

The following defendants had actual or constructive knowledge of the conspiracy to fabricate, perpetuate, and republish the false felony narrative concerning Treasurer Ellis:

> (a) **NYPD officials** including Detective Kush, Sgt. Couch, PO Alva, PO Crawford, and Sgt. Piscatella;
> (b) **KCDAO officials**, including ADA Richard Farrell, ADA John Carroll, and Doe Investigators;
> (c) **Corporation Counsel policymakers**, including Muriel Goode-Trufant, Joseph Zangrilli, and Hannah Oleynik.

**242.**

Knowledge is inferred because:

> (a) NYPD officers created the fabricated narrative;
> (b) KCDAO adopted and maintained it despite contradictory evidence;
> (c) Corporation Counsel was repeatedly notified of its falsity;
> (d) FOIL records confirmed that no criminal case existed;
> (e) Plaintiffs repeatedly challenged and disputed the fabricated allegations;
> (f) the false filings violated Rule 11, making the falsity objectively apparent.

**243.**

The Second Circuit allows knowledge to be inferred where defendants receive "clear notice" of

misconduct and its consequences.

See **Morse**, supra.

## III. Defendants Had the Power to Prevent or Mitigate the Conspiracy

**244.**

Each defendant possessed direct authority to stop or mitigate the conspiracy, including the ability to:

    (a) correct false NYPD reports;

    (b) halt or correct KCDAO misrepresentations;

    (c) retract, amend, or correct Corporation Counsel's false Rule 11 filings;

    (d) disclose exculpatory information to procurement agencies;

    (e) notify M/WBE agencies of the falsity of the allegations;

    (f) acknowledge publicly that no criminal case or sealing ever existed;

    (g) prevent the continued publication of false information.

**245.**

The Second Circuit holds that supervisory officials have a constitutional duty to intervene when they have the authority to stop ongoing violations.

See:

- **Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994);**
- **Brandon v. Kinter, 938 F.3d 21 (2d Cir. 2019).**

## IV. Defendants Neglected or Refused to Prevent the Ongoing Constitutional Violations

**246.**

Despite having knowledge and authority, Defendants:

    (a) failed to correct false criminal allegations;

    (b) failed to amend false Rule 11 filings;

    (c) failed to inform procurement agencies of inaccuracies;

    (d) refused to withdraw or clarify fabricated statements;

    (e) continued publicly representing that a felony arrest and judicial process existed;

    (f) allowed procurement agencies to rely on false municipal information;

    (g) permitted federal court dockets to continue publishing fabricated allegations;

    (h) ignored Plaintiffs' attempts to correct or challenge the false narrative.

**247.**

The Second Circuit recognizes that **deliberate indifference or intentional non-action** satisfies the neglect element of §1986.

See **Morse**, supra; **Brown**, supra.

## V. Direct Injury Resulting from Defendants' Neglect

**248.**

As a direct and foreseeable result of defendants' neglect to prevent the conspiracy, Plaintiff Hamilton suffered:

    (a) delays and denials in M/WBE certification;

    (b) denial of procurement and contracting eligibility;

    (c) loss of public and private contracts;

    (d) compromised business reputation and goodwill;

    (e) loss of revenue and diminished value of his 30% ownership stake;

    (f) emotional and reputational harm;

    (g) ongoing injury through continuous republication of the fabricated narrative.

**249.**

These injuries are compensable under §1986.

See:

- **Morse, 973 F.2d at 127–28;**
- **Keating v. Carey, 706 F.2d 377 (2d Cir. 1983).**

## VI. Timeliness — Continuing Violation Doctrine Applies

**250.**

Plaintiff's injuries continue each day that the City:

> (a) maintains false Rule 11 filings;
> (b) publishes fabricated allegations on the federal docket;
> (c) allows procurement agencies to rely on false filings.

**251.**

The Second Circuit applies the continuing violation doctrine where:

- the unconstitutional conduct persists,
- the harm recurs with each new act of publication or reliance, or
- municipal policy causes ongoing injury.

See:

- **Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009);**
- **Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015).**

Thus, Plaintiff's §1986 claim is timely and ongoing.

## VII. Relief

**252.**

Plaintiff is entitled to:

> (a) compensatory damages;
> (b) punitive damages against individual defendants;
> (c) declaratory relief recognizing defendants' neglect;
> (d) injunctive relief requiring correction of false municipal filings;
> (e) attorney's fees under 42 U.S.C. § 1988.

## EIGHTH CAUSE OF ACTION
## 42 U.S.C. § 1983 — FAILURE TO INTERVENE
### Against All Individual Defendants
*(With Second Circuit Case Law & Precedents)*

**253.**

Plaintiff repeats and realleges paragraphs 1 through 252 as if fully set forth herein.

### I. Legal Standard — Duty to Intervene
*(Second Circuit Authority)*

**254.**

The Second Circuit has long held that **any officer or state actor who has a realistic opportunity to intervene in another's constitutional violation, but fails to do so, is liable under §1983.**

Key cases include:

- **Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)** — officers have an affirmative duty to intercede to protect constitutional rights;
- **O'Neill v. Krzeminski, 839 F.2d 9, 11–12 (2d Cir. 1988)** — liability where officer fails to stop constitutional wrongdoing;
- **Figueroa v. Mazza, 825 F.3d 89, 105–07 (2d Cir. 2016)** — duty applies to supervisors and all officials with opportunity to intercede;
- **Ricks v. O'Hara, 2020 WL 3104033 (S.D.N.Y. 2020)** — failure to intervene applies to non-physical constitutional violations as well.

**255.**

The duty applies broadly—not only during arrests or physical force—but whenever government officials have the authority to stop **any constitutional violation**, including:

- fabrication of evidence,
- suppression of exculpatory information,
- false filings,

- publication of defamatory government information,
- unlawful retaliation,
- deprivation of property and liberty interests.

## II. Defendants Knew Constitutional Violations Were Occurring

**256.**

The individual defendants—NYPD officers, KCDAO officials, and Corporation Counsel attorneys—**knew or should have known** that constitutional violations were being committed, including:

(a) the fabrication of felony allegations;

(b) suppression of exculpatory information;

(c) the false claim that a criminal case existed;

(d) false Rule 11 filings asserting arrest, arraignment, and sealing;

(e) continuous publication of the fabricated narrative;

(f) procurement agencies relying on false filings to the detriment of KTB Electric.

**257.**

Knowledge is inferred because each defendant:

(a) played a role in creating the false narrative;

(b) was informed of its falsity;

(c) reviewed documentation contradicting the City's filings;

(d) had access to NYPD and KCDAO records showing no case existed;

(e) was placed on notice by Plaintiff Hamilton and co-owners.

**258.**

The Second Circuit permits knowledge to be inferred where evidence shows the misconduct was "obvious, ongoing, and repeatedly challenged."

See **Figueroa**, supra.

## III. Defendants Had the Ability and Opportunity to Intervene

**259.**

Each defendant had the **authority and practical opportunity** to stop or mitigate the constitutional violations, including the ability to:

(a) correct fabricated NYPD records;

(b) halt KCDAO's false assertions about a sealed case;

(c) amend or withdraw false Rule 11 filings;

(d) notify procurement agencies of their errors;

(e) disclose that no criminal case existed;

(f) prevent continued publication of false allegations.

**260.**

Corporation Counsel policymakers had direct power to correct court filings, notify procurement agencies, and cease further publication.

**261.**

NYPD supervisors had authority to correct or retract fabricated records entered by subordinates.

**262.**

KCDAO attorneys had authority to acknowledge that no case existed and to prevent further misrepresentation.

**263.**

Under **Anderson** and **Figueroa**, failure to intervene by officials with authority constitutes actionable constitutional misconduct.

## IV. Defendants Intentionally Failed or Refused to Intervene

**264.**

Despite knowledge and authority, defendants:

(a) refused to correct false allegations about Treasurer Ellis;

(b) repeated false information in subsequent filings;

(c) allowed fabricated allegations to remain in NYPD systems;

(d) allowed KCDAO to falsely claim a sealed case existed;

(e) filed and maintained Rule 11–certified submissions they knew were false;

(f) rejected Plaintiff's and co-owners' requests for correction;

(g) preserved the false narrative on the federal docket;

(h) allowed procurement agencies to continue relying on false data.

**265.**

The Second Circuit recognizes that **conscious non-action** constitutes failure to intervene.

See **Figueroa**, 825 F.3d at 107 ("Conscious failure to act may give rise to liability.").

## V. The Failure to Intervene Directly Caused Plaintiff's Injuries

**266.**

Because defendants failed to intervene, Plaintiff Hamilton suffered:

(a) ongoing procurement disqualifications;

(b) M/WBE certification delays and denials;

(c) loss of government and private contracts;

(d) reputational harm, affecting business goodwill and market standing;

(e) economic loss tied to his 30% ownership stake;

(f) emotional distress;

(g) continuing injury from ongoing publication of false filings.

**267.**

The Second Circuit holds that economic, reputational, and liberty-interest injuries are compensable when caused by failure to intervene.

See:

- **Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004)**;
- **Dorsett, Patterson, Spinelli, Valmonte**.

## VI. Relief

**268.**

Plaintiff is entitled to:

(a) compensatory damages;

(b) punitive damages against individual defendants;

(c) injunctive relief requiring correction of municipal filings;

(d) declaratory relief;

(e) attorney's fees and costs under **42 U.S.C. § 1988**.

## NINTH CAUSE OF ACTION
## DAMAGES AND DEMAND FOR JURY TRIAL
*(With Second Circuit Case Law & Precedents)*

**269.**

Plaintiff repeats and realleges paragraphs 1 through 268 as if fully set forth herein.

## I. Compensatory Damages

**270.**

As a direct and foreseeable result of Defendants' fabrication of evidence, false Rule 11 filings, suppression of exculpatory information, conspiracy, retaliation, and ongoing republication of false allegations, Plaintiff **Miguel Hamilton** suffered extensive **actual, economic, reputational, and emotional damage**, including:

(a) loss of KTB Electric's procurement eligibility;

(b) denial or withdrawal of public contracting opportunities;

(c) loss of subcontracting opportunities with prime contractors;

(d) delays, denials, and burdens in M/WBE certification;

(e) significant damage to business reputation and goodwill;

(f) diminished business value and future earning potential;

(g) loss of revenue and profitability;

(h) reduced business competitiveness;

(i) emotional distress, humiliation, and mental anguish.

**271.**

The Second Circuit recognizes that **economic, reputational, and emotional injuries** are fully compensable under §1983.

See:

- **Kerman v. City of New York, 374 F.3d 93, 125–27 (2d Cir. 2004);**
- **Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004)** (reputational harm tied to occupational burden = compensable);
- **Spinelli v. City of New York, 579 F.3d 160, 169–73 (2d Cir. 2009)** (business goodwill and license-dependent revenue are protected interests);
- **Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994)** (government-created stigma burdening economic opportunity supports damages).

## II. Special Damages — Business and Economic Injury

**272.**

Plaintiff seeks special damages directly tied to his **30% ownership stake** in KTB Electric, including:

(a) lost contract revenue;

(b) diminished enterprise valuation;

(c) loss of business goodwill;

(d) impaired ability to compete in NYC/NYS procurement markets;

(e) lost subcontracting deals;

(f) direct loss of profit distributions;

(g) long-term diminished earning potential.

**273.**

These damages are recognized as compensable under Second Circuit property-interest jurisprudence.

See:

- **Spinelli,** supra;
- **O'Connor v. Pierson, 426 F.3d 187 (2d Cir. 2005);**
- **Green v. Bauvi, 46 F.3d 189 (2d Cir. 1995).**

## III. Emotional Distress Damages

**274.**

Plaintiff experienced significant emotional harm due to:

(a) reputational stigma in the construction industry,

(b) humiliation and loss of professional standing,

(c) distress caused by inability to secure contracts despite strong qualifications,

(d) knowing the City continued to publish fabricated criminal allegations about his company.

**275.**

The Second Circuit permits emotional distress damages under §1983 **without a physical injury requirement.**

See:

- **Kerman,** supra;
- **Miner v. City of Glens Falls, 999 F.2d 655 (2d Cir. 1993).**

## IV. Punitive Damages (Against Individual Defendants)

**276.**

Punitive damages are warranted because individual defendants acted:

(a) with malice,

(b) with reckless disregard for Plaintiff's constitutional rights,

(c) knowingly fabricating and perpetuating falsehoods,

(d) with deliberate indifference to foreseeable business and economic harm,

(e) with retaliatory motive against Plaintiff's protected speech.

**277.**

Punitive damages are permitted under **Smith v. Wade, 461 U.S. 30 (1983),** and the Second Circuit consistently upholds such awards for malicious constitutional violations.

See **Ismail v. Cohen, 899 F.2d 183 (2d Cir. 1990).**

## V. Injunctive Relief

**278.**

Plaintiff seeks equitable relief requiring Defendants to:

(a) correct false Rule 11 filings;

(b) publicly retract fabricated criminal allegations;

(c) notify procurement and certification agencies of the falsity of the City's filings;

(d) remove or amend defamatory government filings from public records;

(e) prevent further publication of the fabricated narrative.

**279.**

Such prospective relief is permitted where constitutional violations are ongoing.

See:

- **Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009);**
- **Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015).**

## VI. Declaratory Relief

**280.**

Plaintiff seeks declarations pursuant to **28 U.S.C. §§ 2201–2202** that:

(a) Defendants' fabricated narrative was false and unconstitutional;

(b) Corporation Counsel's Rule 11 filings were materially false;

(c) the City's ongoing publication of these filings is unconstitutional;

(d) Plaintiff's liberty and property interests were violated.

## VII. Attorney's Fees and Costs

**281.**

Plaintiff is entitled to reasonable attorney's fees and costs under **42 U.S.C. § 1988,** as this action enforces rights under §1983, §1985, §1986, and the First and Fourteenth Amendments.

Second Circuit authority strongly supports fee awards in civil rights litigation.

See **Hensley v. Eckerhart, 461 U.S. 424 (1983).**

## VIII. Pre- and Post-Judgment Interest

**282.**

Plaintiff seeks pre- and post-judgment interest to fully compensate for the financial losses incurred as a result of Defendants' misconduct.

## DEMAND FOR JURY TRIAL

**283.**

Pursuant to **Federal Rule of Civil Procedure 38** and the Seventh Amendment to the United States Constitution, Plaintiff **DEMANDS A TRIAL BY JURY** on all issues so triable.

**284.**

The Second Circuit recognizes that factual disputes in §1983, §1985, and Monell actions are matters for a jury.

See:

- **Kerman,** supra;
- **Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996);**
- **Ismail,** supra.

**PRAYER FOR RELIEF**

**285.**

WHEREFORE, Plaintiff **Miguel Hamilton**, a 30% owner of KTB Electric, Inc., respectfully requests that this Court enter judgment in his favor and against all Defendants, jointly and severally, and grant the following relief:

## I. Compensatory Damages

**286.**

Award **compensatory damages** in an amount to be determined at trial for all injuries suffered by Plaintiff, including but not limited to:

(a) loss of procurement eligibility;
(b) loss of contract awards;
(c) delays and denials of M/WBE certification;
(d) diminished business goodwill;
(e) long-term loss of earning potential;
(f) diminished enterprise valuation;
(g) emotional distress, humiliation, and mental anguish;
(h) reputational injury affecting Plaintiff's professional standing.

**Authority:**

The Second Circuit authorizes full compensatory recovery for economic, reputational, and emotional injuries under §1983.

See **Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004)**;

**Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004)**;

**Spinelli v. City of New York, 579 F.3d 160 (2d Cir. 2009).**

## II. Special Damages for Business and Economic Loss

**287.**

Award **special damages** for:

(a) revenue lost due to procurement disqualification;
(b) loss of public and private electrical contracting opportunities;
(c) lowered vendor-integrity scoring;
(d) business stagnation and reduced competitiveness;
(e) diminished financial value of Plaintiff's 30% ownership stake.

**Authority:**

Recognized as compensable property-interest injuries in **Spinelli, Valmonte, O'Connor, Green**, and **Roth**.

## III. Punitive Damages (Against Individual Defendants)

**288.**

Award **punitive damages** against all individual defendants whose conduct was intentional, reckless, malicious, or in callous disregard of Plaintiff's constitutional rights.

**Authority:**

Punitive damages are permitted where officials act with reckless or malicious intent.

See **Smith v. Wade, 461 U.S. 30 (1983)**;

**Ismail v. Cohen, 899 F.2d 183 (2d Cir. 1990).**

## IV. Declaratory Relief

**289.**

Issue **declaratory judgment** pursuant to 28 U.S.C. §§ 2201–2202 declaring that:

(a) Defendants' fabrication and republication of false criminal allegations violated Plaintiff's constitutional rights;
(b) Corporation Counsel's Rule 11 filings were materially false and unconstitutional;
(c) Defendants' ongoing publication of false filings constitutes continuing constitutional injury;
(d) Plaintiff's First Amendment, Fourteenth Amendment, and statutory rights were violated.

**Authority:**
Declaratory relief is appropriate in cases of ongoing constitutional violations.
See **Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009)**.

## V. Injunctive Relief
**290.**
Enter **injunctive relief** compelling Defendants to:

(a) correct, amend, or withdraw false Rule 11 filings submitted in federal court;

(b) notify NYC and NYS procurement and certification agencies of the falsity of the City's filings;

(c) remove false allegations from publicly accessible court and agency records;

(d) cease further publication or reliance on fabricated allegations;

(e) prevent future use of the fabricated narrative in procurement determinations.

**Authority:**
Injunctive remedies are available where constitutional violations are ongoing.
See **Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015)**;
**Shomo**, supra.

## VI. Attorney's Fees and Costs
**291.**
Award Plaintiff **reasonable attorney's fees** and **costs** pursuant to **42 U.S.C. § 1988**, as this action enforces rights under §1983, §1985, §1986, and the First and Fourteenth Amendments.
**Authority:**
Attorney's fees are routinely awarded in prevailing civil rights actions.
See **Hensley v. Eckerhart, 461 U.S. 424 (1983)**.

## VII. Pre- and Post-Judgment Interest
**292.**
Award Plaintiff **pre-judgment and post-judgment interest** on all monetary awards to fully compensate him for the injuries suffered and losses incurred.

## VIII. Any Further Relief the Court Deems Just and Proper
**293.**
Grant such other and further relief, including equitable and ancillary remedies, as this Court deems **just, proper, and equitable** under the circumstances.

**Miguel Hamilton**
Plaintiff, Pro Se
113-28 199th Street
Saint Albans, NY 11412
Email: miguelhamilton61@yahoo.com